# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Guy Cardamone, Madison Supervisor
Elizabeth Blair
John W. Campion
Ramuel R. Figueroa
Matthew Giesfeldt
Jonathan Greenberg
Gabriela A. Leija
Julie K. Linnen
Dennise Moreno
Tom Phillip
Joshua D. Uller

22 East Mifflin Street
Suite 1000
Madison, Wisconsin 53703

Telephone 608-260-9900
Facsimile 608-260-9901

November 8, 2024

The Honorable William M. Conley
United States District Judge
United States District Court
　for the Western District of Wisconsin
120 N. Henry Street
Madison, Wisconsin 53703

　　　　Re:　*United States v. Erik Smay*
　　　　　　Case No. 24-cr-51-wmc

To the Honorable Judge Conley:

　　　The defense submits this memorandum in support of the parties' joint recommendation of a sentence of probation. Mr. Erik Smay has taken this offense and case seriously, he's taking advantage of drug treatment through pretrial services, and while his recovery and self-improvement has—like his entire life—not been without stumbles, his overall trajectory has been one of growth and insight into his addiction. Probation will continue to let him implement change and give him more opportunities to further show that he will "be stronger than [his] excuses."[1]

---

[1] Exhibit 1 (Letter from Ms. Amy Nemmetz, Smay's counselor (Oct. 30, 2024)).

Federal Defender Services
Of Wisconsin, Inc.

### A. Erik Smay's life.

Smay's family and personal connections are few but strong. Having experienced significant abandonment and constant uprooting, he holds on tight to the few people closest to him. Those core people who are still part of his life today have maintained firm connections with Smay throughout his many struggles—a nomadic childhood, his early experimentation with recreational drugs as a teenager, a serious physical injury causing a permanent disability leading to a more serious addiction, and multiple losses of meaningful relationships through death and abandonment.

#### a. Smay's childhood.

Smay's biological father was never in his life, having left him and his mother when Smay was an infant.[2] However, his mother, Julie, met and later married Kevan Smay, Smay's step-turned-adoptive father.[3] Julie describes Kevan as "a very positive role model and an excellent father to Erik."[4] Smay agrees.

Throughout Smay's formative years, Kevan's job as a lineman for cable TV forced the family to move repeatedly to wherever the work was needed.[5] Smay recalls living in enough states to fill a geography quiz: Minnesota, Florida, Texas, Nebraska, Missouri, Wisconsin, Colorado, Arizona, West Virginia, Maryland, and Pennsylvania.[6] Smay "attend[ed] a different school for almost every year he attended school."[7] As a result of this incessant upheaval, Smay would make friends only to inevitably lose them with the next move.

Smay was 16 when his parents divorced.[8] At 17, he chose to live with his father in Illinois and then Colorado.[9] His father remarried, and Smay's stepmother, Lisa, became a big part of his life. In fact, Lisa was the first person to confront him about his drug use. Smay, a defiant teenager, rebelled, rejected Lisa's help, and moved back with his mother in Wisconsin. Shortly thereafter, Lisa died of cancer. Smay struggles with sadness and guilt over his rejection of his stepmother's early and noble efforts to help him.[10] *What if* Smay hadn't rejected Lisa's help before she died? Smay asks himself that question

---

[2] Exhibit 2 (letter from Julie Smay (Nov. 1, 2024)).
[3] Ex. 2.
[4] *Id.*
[5] Ex. 2; R.29:13-14.
[6] R.29:14.
[7] Ex. 2.
[8] R.29:13-14.
[9] R.29:14.
[10] R.29:14.

2

Federal Defender Services
Of Wisconsin, Inc.

regularly, especially these days as he comes before the Court for sentencing because of his actions driven entirely by his addiction.

### b. The important people in Smay's life.

As described above, Smay has not had the opportunity for many meaningful relationships in his life. And, his injury, described below, has limited him such that he doesn't have work friends or other professional relationships. But Smay is far from a loner. His grip is tight on the few, meaningful connections that he has.

His connections start with his mother, Julie. She supports three generations (herself, Smay, and Connor), who all reside together in Julie's McFarland apartment. She got Smay through multiple self-led detoxes; she helps raise Smay's son, Connor; and she has been the one constant in Smay's life. She describes their bond as "unshakeable, completely unconditional."[11]

Following his mother's lead, Smay prides himself in his love for his children. While the PSR accurately states that Smay only has one child, don't tell him that. To him, he has *two*. His son, Connor, is 18, and is biologically Smay's. They live together with Julie, and Smay and Connor are close. Manami is Smay's ex's daughter, and Smay raised her as his own since she was 7. In every way that matters, she too is Smay's child. She's currently 26 and has children of her own. These, to Smay, are his grandchildren.

### c. Smay's eye injury and permanent disability.

Intertwined with Smay's addiction has been the complicating factor of his physical disability, stemming from a series of major injuries to his eye. As a young child while playing with a friend in the snow,[12] a piece of ice hit Smay's left eye, detaching the retina and splitting the eye open.[13] He underwent emergency surgery to reconstruct the eye.[14] It took over a year for doctors to replace the lens with an implant to restore Smay's sight.[15] However, the sight that was restored wasn't 20/20—his mother recalls that Smay struggled to see clearly while "walking across the street" or riding his bike.[16]

---

[11] Ex. 2.
[12] Smay remembers it to have occurred when he was ten. R.29:15. His mother believes it occurred when he was eight. Ex. 2.
[13] R.29:15.
[14] R.29:15.
[15] Ex. 2.
[16] *Id.*

3

Federal Defender Services
Of Wisconsin, Inc.

In 2004, Smay once again hurt his "bad eye."[17] This time, he was playing video games with a friend, and in what he describes as a "freak accident," his friend's fingernail hit and sliced open the previously-repaired eye.[18] This time, his sight could not be saved. And while doctors maintained the structural integrity of the outer eye, Smay suffers from constant and severe migraines resulting from the accident.[19]

In the early 2020s, Smay's eye once again went under the knife. His eye began to "die" when structural integrity of the organ had dissipated beyond saving.[20] He now wears a prosthetic eye and, as a result of his blindness and debilitating migraines, collects Social Security income to support himself.[21] In short, Smay has effectively suffered from two types of blindness. The first is literal—his loss of vision follow repeatedly ocular trauma. As the following section will show, his second kind of blindness is figurative—his lack of insight, prior to the case, into his lifelong addiction.

### d. Smay's long history of drug use and relapses.

Smay was first exposed to recreational drug abuse as a teenager, when he was offered marijuana at the strikingly young age of 12.[22] He continued to struggle with substance abuse as a teenager and young adult.[23] For example, approximately two decades ago, he became addicted to methadone. His then-partner, and mother to his son, Maria, was addicted to methadone, too.[24] Back then, Maria was "the love of [Smay's] life."[25] But, her own addiction to methadone made Smay's difficult to kick.[26] As the Court knows well, one of an addict's greatest risk factors is the company they keep. But, for the life of his then-two-year-old son, Smay was determined to kick his methadone use.[27] With this help of his mom, he went off methadone cold turkey, and while he suffered excruciating symptoms of withdrawal (he recalls huddling in a closet in the fetal position), he was able to get clean through what his mother calls his personal "resolve."[28]

---

[17] R.29:15.
[18] Ex. 2.
[19] R.29:15; Ex. 2.
[20] R.29:15.
[21] R.29:15.
[22] R.29:16.
[23] R.29:16-17.
[24] Ex. 2.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*

Federal Defender Services
   Of Wisconsin, Inc.

After giving up and getting off methadone, Smay got a job at Sub Zero.[29] His work attendance initially suffered because of migraines resulting from his eye injury.[30] But, to support his family, he toughed it out for three years.[31] Unfortunately, his stable attendance and sobriety wouldn't last. He suffered an accident at work, hurting his back, and for treatment, he was (perhaps unwisely) prescribed opiates.[32] With his prior struggles, Smay relapsed into addiction. He lost his job and his family's home. So, he turned to his mother for support, who took in Smay, Maria, and their son, Connor, in her small apartment. She did this to help Smay and Maria get clean from opiates and methadone, respectively. Once again, Smay's resolve proved effective when Maria's did not. He painstakingly weaned himself from the opiate, but Maria left, abandoning both her detox efforts and her family.[33]

Years later, Smay's eye injury once again emerged as a hurdle to consistent sobriety. As mentioned above, his eye began to die, causing frequent and severe pain. Although this time he avoided meth and opiates, he turned to the numbing effects of cocaine to cope.[34] At the time of the offense, this was his drug of choice. But, as described below, his resolve, his engagement with treatment, and admittedly the threat of incarceration, have together been enough for him to beat that drug, too.

### B. Smay's ongoing and meaningful engagement with his drug treatment.

Smay began substance abuse counseling as a condition of pretrial release without having ever engaged in treatment before. His counselor is Ms. Amy Nemmetz. In her words, Smay is "engaged and invested in curbing marijuana use[.]"[35] She further observed that Smay "has maintained a positive attitude and continues to demonstrate a dedication to treatment."[36] What's more, he is not simply going through the motions of treatment. When he leaves his sessions, he thanks Ms. Nemmetz, telling her specifically *what* it is he is thankful for from that particular session.[37] He listens, he synthesizes, and he deposits what he learns into his long-term memory to ensure growth.

Smay acknowledges that his attendance has not been perfect during his pretrial supervision period, but Ms. Nemmetz notes that he "has contacted me in advance of his appointments when needing to reschedule due to a conflict with transportation or due to

---

[29] *Id.*
[30] *Id.*; R.29:15.
[31] R.29:17.
[32] Ex. 2; R.29:16.
[33] R.29:14.
[34] R.29:16.
[35] R.26:5.
[36] Ex. 1.
[37] *Id.*

5

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

illness."[38] Attendance is not as concerning, however, as the bigger problem: his ongoing marijuana use.[39] Smay has relied on marijuana to cope with anxiety and aid with sleep after giving up cocaine.[40] But, this is no excuse, and this ongoing manifestation of his addiction is not acceptable. Not only does this violate his pretrial release conditions, but under probation, it would be grounds for revocation, wasting the chance that the parties recommend the Court give to Smay to turn his life around without prison. It must stop.

Although the defense fully recognizes the severity of this problem, Smay's continued marijuana use should not lead the Court to reject the joint recommendation for probation. Instead, in the broader context of Smay's entire journey, his continued use, while concerning, is nevertheless part of an overall trajectory of progress that is pointing toward an endpoint of voluntary sobriety.

Smay was abusing cocaine for years, a notoriously addictive drug, but after being placed on pretrial services, he simply stopped. While he tested positive for the drug in June at the very start of pretrial supervision when the drug was still in his system, he has tested cocaine-free since.[41] His relinquishing of marijuana, on the other hand, is an ongoing process. That's not surprising: the journey to genuine sobriety and a substance-free life is not measured in weeks or months, especially after a lifetime of addiction. While marijuana abuse is obviously serious, the scientific community regards cocaine as the more addictive and destructive drug.[42] And Smay has used this prosecution as the impetus to get off that drug. Notably, this fits an established pattern in his recovery: he has gone from methadone to opiates to cocaine, and the last vestige of his addiction is marijuana—the least dangerous of those four substances. That being said, ceasing marijuana use is, and will be, no small task. He's put forth significant effort on his overall path to sobriety; he has not quite arrived at the finish line.

To that point, recovery from addiction is not linear.[43] Substance use disorders "are often described as 'chronically relapsing'" but, on average, U.S. adults tend to reach some semblance of sobriety after two-to-five attempts.[44] If Smay follows this trend, his previous successful efforts to end use of methadone, opiates, and now cocaine suggest that, with

---

[38] *Id.*

[39] R.31.

[40] R.29:16.

[41] R.25; R.31.

[42] *See, e.g.,* Wagner FA, Anthony JC, *From first drug use to to drug dependence; developmental periods of risk for dependence upon marijuana, cocaine, and alcohol.* NEUROPSYCHOPHARMACOLOGY. 2002; 26(4).

[43] *See, e.g.,* Kelly, John F., Green, Martha Claire, Bergman, Brandon G., White, William L., and Hoeppner, Bettina B., *How many recovery attempts does it take to successfully resolve an alcohol or drug problem? Estimates and correlates from a national study of recovering U.S. adults*, ALCOHOLISM: CLINICAL RESEARCH AND EXPERIMENTAL RESEARCH (Vol. 43, No. 7) (July 2019)._

[44] Green at al.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

the help of continued treatment, genuine sobriety and stability is reasonably within his sights.

Smay's tangible and demonstrated successes are why probation is warranted here. He's stopped using cocaine, gradually winnowing down the substances upon which he relies, and he's engaged in counseling and treatment. He's on the right track. Incarceration would magnify his mental health issues (having never been incarcerated), stonewall his counseling, and surround him with antisocial peers. Indeed, incarceration would likely be counterproductive to Smay's recovery, increasing the chances of relapse into more serious and dangerous drugs upon his release.

In sum, while Smay's progress hasn't been perfect, his overall trajectory is positive, and he has clearly taken advantage of the treatment offered through pretrial services. He hopes and intends to continue to benefit from treatment moving forward.

### C. The offense, the appropriate sentence, and the need to fashion an outcome that maximizes the chances that Smay finds sobriety

Regarding the offense, Smay views it as his shameful rock-bottom. Struggling with his cocaine addiction, he hoped to maintain relationships with his drug providers and help himself earn enough money to reinforce his habit. He certainly did not want or foresee any particular harm done from the firearms he purchased, but in his haste to feed his addiction, he didn't take the time to think about that.

So, Smay purchased multiple firearms.[45] In doing so, he filled out ATF Form 4473, and despite being a regular user of cocaine at the time, he checked a box to indicate otherwise, averring that he was not then an unlawful user of any controlled substance.[46] He has taken full responsibility for his conduct, first entering into a plea agreement with the government and then entering his actual plea before this Court.

Despite the seriousness of the offense, the parties agree that probation is the appropriate outcome here. Broadly speaking, probation will both maintain Smay's progress in treatment and provide a powerful tool for accountability. Smay has never before found an opportunity or proper motivator for thorough and consistent treatment to address his drug abuse. He has never been forced into treatment through jail or the system, and he's faced financial barriers to more traditional means of support. When given that opportunity through pretrial services, he's been engaged and committed. Perfect? No. But motivated and eager to progress? Absolutely. Probation allows this

---

[45] R.29:3.
[46] R.29:3.

7

F<small>EDERAL</small> D<small>EFENDER</small> S<small>ERVICES</small>
    O<small>F</small> W<small>ISCONSIN,</small> I<small>NC.</small>

progress to keep going, giving Smay the best chance for actual and genuine sobriety that he has not had since childhood.

Further, probation provides the short leash that will ensure Smay's compliance and protect the public from any other harm. While on pretrial services, Smay has demonstrated progressive improvement, respect for the process, and a sufficient carrot (or stick, depending upon how you view it) to help him quit cocaine on his own. A constant threat of consequence will keep Smay on track. And, in the event that he doesn't, he'll be sentenced to prison. His guidelines range calls for 30-37 months of incarceration.[47] That's the kind of sentence he could face if revoked from probation. It remains a powerful incentive to comply.

More broadly, Smay is the type of defendant who deserves a chance at probation. While he has admittedly used illegal substances before, Smay has zero criminal history points.[48] He has no priors. He's never been to jail before. He took responsibility for his conduct.[49] And he's engaged in his counseling in a genuine effort to get better. Recovery is a long road, upon which there will always been stumbles. These blunders are not the litmus test for success. Instead, the question is whether the person is taking recovery seriously - "walking the walk" by demonstrating steps toward progress. Smay has done this. He overcame his cocaine addiction and he's working through his demons in counseling. He's made genuine changes. He's not all the way there, but these actions demonstrate insight and progress. The defense submits that Smay should be given a chance to keep progressing down this path. Probation permits him to do so.

Thank you for your time and consideration.

Respectfully,

*/s/ Matthew Giesfeldt*
Matthew Giesfeldt
Jonathan Greenberg
Associate Federal Defenders

---

[47] R.29:19.
[48] R.29:12.
[49] R.29:12.